

**STATE OF NEW YORK**
**OFFICE OF THE ATTORNEY GENERAL**

ANDREW M. CUOMO  
ATTORNEY GENERAL

DIVISION OF SOCIAL JUSTICE  
ENVIRONMENTAL PROTECTION BUREAU

May 15, 2006

**By Federal Express**

Honorable Stephen C. Robinson
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

      Re:  State of New York v. HSBC Bank USA, N.A.
          Civil Action No. 07 CV 3160 (SCR)

Dear Judge Robinson:

  Pursuant to your law clerk's instructions, enclosed is an original and one copy of a proposed consent decree executed by the parties in the above captioned matter resolving an action by the State of New York against HSBC Bank USA, N.A. ("HSBC") pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 *et seq.,* and New York's Environmental Conservation Law ("ECL"). The action seeks recovery of the State's costs that were incurred in responding to the release and threat of release of hazardous substances at the Westwood Chemical Company site ("Westwood Site") located in the Town of Walkill, Orange County, New York. The action also seeks an assessment of civil penalties against HSBC for failing to take prudent and necessary measures and report the release and threat of release to the New York State Department of Environmental Conservation ("DEC") as required by law. The State seeks the Court's approval and entry of the consent decree because it is fair, reasonable, and in the public interest.

  Also enclosed is a copy of the State's summons and complaint outlining the causes of action asserted against HSBC (Exhibit A), and a copy of HSBC's waiver of service of the summons and complaint that has been filed with the Clerk (Exhibit B). The State and HSBC are the only two parties to the action. The consent decree therefore resolves the action in its entirety.

  As set forth below, the consent decree not only represents a fair and reasonable resolution of the State's claims against HSBC that is in the public interest, it also represents a part of a global settlement of claims among the State, the Bank, a Chapter 7 bankruptcy trustee, and

several other the parties in a bankruptcy case entitled *In re Westwood Chemical Corporation* (Civil Action No. 05-35298) and related adversary proceedings pending in the United States Bankruptcy Court for the Southern District of New York before the Honorable Ceceila G. Morris.  The State therefore respectfully requests that the Court approve, sign and enter the consent decree.

## Background

Westwood was a chemical manufacturing concern that generated hazardous substances and hazardous waste and was subject to numerous environmental laws and regulations, including those governing water pollution, air pollution, solid and hazardous waste storage and disposal, and underground and chemical bulk storage.  Westwood operated its business at a nine-acre site consisting of a 52,000 square-foot building with offices, laboratories, manufacturing areas, and a warehouse.  HSBC was Westwood's primary lender.  In early 2004, HSBC declared Westwood in default on its loans.  Westwood's default and HSBC's actions ultimately led to Westwood's closure and bankruptcy.

On or about October 25, 2004, Westwood ceased manufacturing operations at the Westwood Site and laid off its employees.  When operations ceased, Westwood left behind and otherwise abandoned, disposed and released chemical products and waste in indoor and outdoor areas at the Site.

On January 25, 2005, HSBC brought Westwood into bankruptcy by filing an involuntary petition pursuant to Chapter 7 of the Bankruptcy Code.  Shortly thereafter, Westwood filed its own voluntary petition.   A Chapter 7 trustee was then appointed to liquidate Westwood's assets.

In February 2005, DEC learned that hundreds of tanks, drums, totes and containers of hazardous waste and hazardous substances had been abandoned and disposed in the yard and in the building at the Westwood Site.  Some were leaking, frozen, and/or in various stages of deterioration.  The Site was completely abandoned and without security, electricity, heat, water, and fire suppression capability.  DEC immediately performed an emergency response action and secured the Site, incurring approximately $65,000 in costs.  Because of the magnitude of the environmental problems at the Site, DEC requested that the United States Environmental Protection Agency ("EPA") perform additional response measures.  EPA then performed a major response action at the Westwood site, removing the waste and otherwise remediating the Site.  EPA incurred approximately $3 million in costs.

In March 2005, DEC issued a Notice of Violation to Westwood, its owners and management, alleging numerous violations of the State's hazardous waste laws.  In April 2005, the Attorney General's Office commenced an investigation into the activities leading up to the abandonment of the Westwood Site pursuant to Executive Law § 63(12).  The actions of HSBC Bank and Westwood's management were closely scrutinized and led to the complaint filed here.

3

In April 2006, the trustee filed a adversary proceeding complaint in the Bankruptcy Court alleging that HSBC and Westwood's owners were liable for CERCLA contribution to the estate for reimbursement of DEC's and EPA's costs. The trustee's complaint also sought a reduction in, and subordination of, HSBC's purported secured claim against the Westwood estate.

On September 22, 2006, the State filed an administrative claim in the Westwood bankruptcy case for $168,000, representing DEC's response costs of $65,000, post-petition civil penalties of $100,000 for violations of State hazardous waste laws, and $3,000 in outstanding environmental regulatory fees. EPA filed an administrative claim in the bankruptcy proceeding for its response costs of approximately $3 million.

In December 2006, the bankruptcy trustee entered into a stipulation to resolve the State's and EPA's claims. Under the stipulation, the trustee paid DEC $40,000 representing a compromised post-petition penalty and $1.5 million for EPA's response costs. Neither DEC's nor EPA's claims were fully satisfied in the bankruptcy proceeding. In a separate stipulation, the trustee compromised the estate's CERCLA contribution claims against HSBC and Westwood's owners. On March 21, 2007, the Bankruptcy Court approved those stipulations of settlement, both of which are also attached (Exhibit C). Ultimately, the bankruptcy trustee was able to sell the Westwood Site to a third party for approximately $3 million following DEC and EPA's CERCLA response actions. At this time, the administration of the Westwood bankruptcy estate is nearly complete.

On December 22, 2006, HSBC and the State, executed the proposed consent decree that resolved all of the State's claims arising from conduct leading up to and following the abandonment of the Westwood Site.

## Terms of Proposed Consent Decree

Under the proposed consent decree, the State and HSBC have agreed to the following terms:

HSBC will reimburse DEC in full for response costs of $65,000;

HSBC will reimburse the Attorney General's Office for enforcement costs of $50,000;

HSBC will pay the State a civil penalty of $850,000 for violations of the ECL alleged in the complaint, including the failure to report the abandonment of hazardous substances to DEC.

HSBC will review and revise its environmental policies and practices and conduct an employee training program related to compliance with the environmental requirements of CERCLA and the ECL, estimated to cost approximately $250,000.

4

The State has agreed to release HSBC from any further liability arising out of the Westwood Site, and to provide "contribution protection" against future claims by third parties pursuant to CERCLA Section 113(f), 42 U.S.C. § 9613(f).

### Justification for the Consent Decree

The State respectfully submits that the terms of the consent decree are fair, reasonable, in the public interest, and consistent with the purposes of CERCLA. The settlement will result in reimbursement in full of the State's response and enforcement costs and payment of a significant civil penalty of $850,000 that will have a deterrent effect in the future with respect not only to HSBC, but to other banking and financial institutions. Finally, the settlement will result in a comprehensive in-house training program for HSBC employees and management that is designed to review reporting and other requirements of State environmental law, and the parameters of CERCLA's exemption for lenders.

The parties engaged in extensive settlement negotiations over several months following a year-long investigation by the Attorney General's Office. The settlement negotiations were conducted in good-faith and the proposed consent decree is the product of arms-length discussions. The parties both recognized the costs and risks associated with litigation and considered other relevant factors, including the willingness of both sides to reach an agreement to resolve the State's claims.

In the absence of this settlement, the State and HSBC would be required to expend substantial additional resources to pursue discovery and bring this complex case to trial. The consent decree eliminates the risks to both parties associated with extensive discovery and a lengthy trial. Moreover, the consent decree preserves judicial resources.

The State has provided both the Department of Justice ("DOJ") and EPA with the consent decree and with notice of the State's present application to this Court for approval of it. Neither has expressed any objection to the entry of the consent decree. Indeed, there are no known objecting parties to the consent decree. Hence, the State respectfully requests that the Court approve the proposed consent decree upon application of the standard of review set forth below.

### Standard of Review

In this Circuit, a court should enter a proposed consent decree which (1) falls within the court's subject matter jurisdiction; (2) comes within the scope of the parties' dispute as determined by the pleadings; and (3) furthers the objectives of the laws upon which the complaint is based. *See Cronin v. Browner*, 898 F. Supp. 1052, 1064 (S.D.N.Y. 1995) (quoting from *Kozlowski v. Coughlin*, 871 F.2d 241, 244 (2d Cir. 1989). In approving a proposed settlement under CERCLA, the Court should not substitute its judgment for those of the parties, but should "assure itself that the terms of the decree are fair and adequate and are not unlawful, unreasonable, or against public policy." *United States v. Hooker Chemicals and Plastics Corp.*, 540 F. Supp. 1070, 1072 (W.D.N.Y. 1982). The district court must ascertain whether the

settlement is "fair, reasonable and consistent with the mandate of Congress" in CERCLA. *United States v. Cannons Engineering Co.*, 899 F. 2d 79, 85 (1st Cir. 1990) (*citing* H.R. Rep. No. 253, Pt. 3, 99 Cong., 1st Sess. 19 (1985), *reprinted* in 1986 U.S. Code Cong. and Admin. News 3038, 3042).

Courts considering CERCLA settlements "have recognized that the usual federal policy favoring settlement is even stronger in the CERCLA context." *B.F. Goodrich v. Betkoski*, 99 F.3d 505, 527 (2d Cir. 1996) (citing *Cannons Engineering*); *see also New York v. Solvent Chemical Co., Inc.*, 984 F. Supp. 160, 165 (W.D.N.Y. 1997) (limited standard of review of proposed CERCLA consent decree "reflects a clear policy in favor of settlements"). Such a deferential standard of review is particularly appropriate for settlements that have been negotiated and approved by a governmental agency with responsibility for enforcing the relevant environmental protection statutes. *See United States v. Hooker Chemicals & Plastics Corp.*, 776 F.2d 410, 411 (2d Cir. 1985) (affirming entry of settlement under CERCLA in view of well-established policy of encouraging settlements, and the fact that the instant settlement has the approval of the State and federal governmental agencies charged with the enforcement of the environmental protection statutes); *see also Cannons*, 899 F.2d at 84; *Wellman v. Dickinson*, 497 F. Supp. 824, 830 (S.D.N.Y. 1980), *aff'd*, 647 F.2d 163 (2d Cir. 1981). It is not the Court's function to determine whether this is the best possible settlement that could have been obtained, but rather "the Court's duty is to determine whether the settlement is within the reaches of the public interest." *City of New York v. Exxon*, 697 F.Supp. 677, 693 (S.D.N.Y. 1988), *aff'd*, 899 F.2d 79 (2d. Cir. 1990) (quoting *United States v. Carrolls Development Corp.*, 454 F.Supp. 1215, 1222 (W.D.N.Y. 1978).

As set forth below, the consent decree between the State and HSBC fully meets the foregoing criteria and should be approved by the Court.

**(1)    The Court Has Subject Matter Jurisdiction to Enter the Proposed Consent Decree Under CERCLA, 42 U.S.C. § 9613**.

The Court has exclusive original jurisdiction over the CERCLA claims alleged in this action, and the settlement of those claims in the consent decree, pursuant to CERCLA, 42 U.S.C. § 9613(b). The Court has supplemental jurisdiction over the State law claims pursuant to 28 U.S.C. § 1367. The State is entitled to commence this action against HSBC to recover all costs of removal or remedial actions, also known as "response costs," pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607. The State in this action claims that HSBC was the "operator" of the Westwood Site, within the meaning of CERCLA Section 107(a), 42 U.S.C. § 9607(a), and that HSBC's actions resulted in the release or threat of release of hazardous substances to the environment, making it liable for the State's response costs (Complaint, First Cause of Action). The State also alleges that HSBC's conduct violated the hazardous waste laws and reporting requirements set forth in ECL Articles 17, 27, 37, and 71 (Complaint, Second - Fourth Causes of Action). In entering into the consent decree, HSBC does not admit the allegations in the complaint.

6

### (2) The Consent Decree Resolves the CERCLA and ECL Causes of Action Alleged in the Complaint.

The consent decree resolves the foregoing CERCLA and ECL causes of action because HSBC will reimburse the State for its CERCLA-related response and enforcement costs and will pay a significant civil penalty for the ECL violations related to the abandonment, release and disposal of hazardous substances and hazardous waste and the failure to report the threat posed. In addition, the consent decree requires a training program that is intended to educate HSBC personnel of the applicable requirements of both State and federal environmental laws and establish a standard of care in future dealings that have the potential to impact the environment.

### (3) The Consent Decree Furthers the Objectives of CERCLA and the ECL.

The consent decree furthers the objectives of CERCLA and the ECL by reimbursing the State for its CERCLA response costs and by imposing a civil penalty that will have a prospective deterrent effect. Moreover, the consent decree is consistent with the Congressional objectives underlying CERCLA: to encourage prompt and effective responses to hazardous waste releases, to impose liability on responsible parties, and to enter into timely settlements that reduce the inefficient expenditure of public funds on lengthy litigation. *See In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 118-19 (2d Cir. 1992). A consent decree is presumptively valid and should be approved if it is in the public interest and there is a credible explanation for the structure of the decree. *See United States v. Hooker Chemicals & Plastics Corp.,* 540 F. Supp. 1067, 1080 (W.D.N.Y. 1982) ("strong presumption of validity"). The prompt resolution of this case whereby the State is paid its response costs in full and a significant penalty is clearly within the purposes of CERCLA and the ECL, and is in the public interest. *City of New York v. Exxon*, 697 F.Supp. at 693.

Thus, the proposed consent decree meets the criteria for entry. Hence, the State respectfully requests that the Court approve it. The parties are available at the Court's convenience to respond to any questions regarding the consent decree.

                Respectfully submitted,

                Maureen F. Leary
                Assistant Attorney General
                (518) 474-7154

cc: Kevin M. Hogan, Phillips Lytle, Attorney for HSBC (By Federal Express)
   G. Stephen Hamilton, NYSDEC (By Regular Mail)
   Michael Mintzer, USEPA (By Regular Mail)
   Sarah Light, AUSA (By Regular Mail)
   John Privitera, Esq., Attorney for Chapter 7 Trustee (By Regular Mail)